Miller, J.
On the trial of the cause the district court found- from the evidence, that in May, 1866, one of the plaintiffs, N. Carr, made a bid to the post-office department for the mail route between Oskaloosa and Montezuma, Iowa; that afterward he ascertained that he was underbid, and wishing to bid again, and supposing that a second bid from him would not be received, he requested the defendant to bid for him in his (defendant’s) name; that defendant consented to do so and signed a blank bid, which was filled by said Carr with such sum as he deemed proper. This bid was accepted by the department, and a contract duly entered into by the defendant, for carrying the mails on said route for the term of four years, ending June 30,1870, at $371 per year. All the business in effecting this contract was done by said Carr, except that defendant signed his name whenever necessary, and took the required oath, but considered himself, as between him and Carr, only the nominal contractor. Carr, in contemplation of carrying out the contract with the government, formed a partnership with Alexander Cordon,-the other plaintiff, to stock and run the route with hacks, and to share equally in expenses and profits of the service.
That on the faith that Carr was the equitable owner of the contract, and that the plaintiffs would be permitted to have the sole control of the same, and receive the full compensation from the government therefor for the entire term, with the knowledge cmd agreement of the defendant, the plaintiffs put on the necessary stock of horses, hacks, *218 etc., for carrying the mails and passengers over said route, and commenced said service July 1, 1866.
About the 1st of September, 1866, through the efforts of the plaintiffs, the route from Montezuma to Brooklin, Iowa, was added to, and became a part of, defendant’s route, at an increase of compensation of $450 per year, and plaintiffs took the same control over this route they were exercising over the other.
The plaintiffs continued to run their hacks, carrying the mails and passengers over both of these routes, with the understanding and agreement before stated, receiving all the pay for the same from the government, the defendant signing whatever orders and papers were necessary to enable them to draw the money, being permitted by them to ride on the routes in' their hacks free of charge until about the 15th of August, 1861, at which time the defendant sold out said routes to one Shipley, informed plaintiffs that they could not run them any longer, and directed the postmasters not to deliver the mails to the plaintiffs, but to Shipley.
During the time plaintiffs so carried the mails, they fully complied with all the requirements of the defendant’s contract with the government, and no complaint was made by the defendant as to the manner in which the work was done.
The court also found that the plaintiffs had sustained damages by being prevented from carrying the mails and controlling said mail route, as contemplated by the parties, for the entire term, in the sum of $300.
Upon these facts the district court found, as conclusions of law, 1st. That the agreements between plaintiffs and the defendant did not constitute an employment of the former by the latter, as averred in-the petition. 2d. That said agreements did not constitute any valid contract between the parties, for the reason that the same was in violation of regulations of the post-office department. The *219 general term reversed this judgment, and rendered a judgment for the plaintiffs, and the questions presented for our determination are —
1. Did the general term err in reversing the judgment of the district court ?
2. Did the general term err in rendering judgment for the plaintiffs, for the damages sustained by them as found by the district court.
I. ■ Whatever may have been the agency of Oarr in procuring the defendant to bid for, and obtain from the government, the mail contract referred to in the pleadings and finding of the district court, it is clear that when the defendant entered into the contract with the government he alone was the legal holder of the same, and was bound to its performance. The government knew no person beside him in the contract. The law knew no other parties to it than the government on the one part, and the defendant on the other. He might have then refused to allow the plaintiffs to have any thing to do with it or under it. But, with his knowledge and consent, the plaintiffs formed a partnership, bought horses, hacks, etc., and entered upon the fulfillment of his agreement with the United States. He agreed that if they should do all this and perform his contract, they should receive the entire pay stipulated for in the contract.
The defendant did not assign the contract. There was no agreement that he should do so. He could not legally assign it under the regulations of the post-office department. In what other capacity, then, were the plaintiffs performing the services, if not as employees of the defendant ? None, whatever. They were not the contractors; they were not assignees. They could not be such, legally. And there is no illegality in an agreement by which a mail contractor employs other parties to execute the contract on his part; at least, not such illegality as to render the contract of employment void. Pierce v. Walker, 23 Iowa, 424.
*220 It is insisted, on the part of appellant, that there was no consideration to support the agreement between the plaintiffs and defendant. The argument seems to be, that the promise of the defendant, viz.: “ That if plaintiffs would perform defendant’s part of the contract with the government, they should receive the entire pay stipulated for in the contract, the defendant thereby receiving nothing for his promise,” was a mere naked promise, without any consideration to support it; that, as the defendant received nothing beneficial for his promise, it was therefore void.
We have seen that the defendant .had entered into a contract with the United States, by which he had obliged himself to cany the mails on a specified route, in the manner and for the time therein stipulated. This he was bound by his contract to perform.
The plaintiffs agree that they will perform the contract for him and in his stead. This is the consideration for his promise that they shall be allowed to do so and receive the pay therefor, and it is immaterial whether the defendant profits by the agz’eeznent or not. The contract is as much supported by a valuable consideration as it would have been if defendant had agreed to pay plaintiffs but half the contz’act price for the services, and thereby make a clear profit of the other half himself. Damage, trozzble, or inconvenience to the pz-omisee constitutes as good a consideration as does benefit or advantage to the promisoz-. And services rendered by one party for another, at his request, is always a sufficient consideration for a pz’omise. 1 Pars, on Con. (5th ed.) 445; and see the following cases: Townsley v. Samzall, 2 Pet. 170; King v. Thompson, 9 id. 209; Foster v. Fuller, 6 Mass. 58 ; Doyle v. Knapp, 3 Scam. 334; Hilton v. Soutwick, 17 Me. 303; Kempton v. Coffin, 12 Pick. 129; Forwin v. Smith, 35 Vt. 69; Findly v. Ray, 5 Johns. 125; Taylor v. Muke, 4 Blackf. 388.
If, after the plaintiffs had entered upon the fzzlfillment *221 of the contract, by stocking tbe route and carrying tbe mails for a time, they had failed or refused to continue, and the defendant had been injured thereby, he could have recovered damages against them for such failure or refusal. Pierce v. Walker, 23 Iowa, 424.
Whether the agreement between these parties was binding before the plaintiff entered upon the performance, we need not decide. It was valid and binding, however, after plaintiffs had entered upon its execution. The defendant, as we have seen, could have enforced it against the plaintiffs. So also the plaintiffs enjoy the same right to enforce it against the defendant. 1 Pars, on Con. (5th ed.) 448-451, and cases cited.
The general term did not err, therefore, in their judgment, reversing the judgment of the district court.
3. general fudgnient^n appeal. II. The second question is, whether the general term committed an error in rendering judgment in that court f° plaintiffs. Chapter 86 of the laws of 1868, section 20, provides that “the general term may reverse or the judgment or order below, or the part of either appealed from, or may direct such judgment or order as the court or judge below should have done. It may also, when it affirms a judgment, direct judgment against the appellant and his sureties on the appeal bond; and in all cases may make such order as to costs as may be just; but in all cases where a new or piodified judgment or order is directed by the general term, its decision, with the transcript or other record upon which it was made, shall be at once certified back to the clerk of the court of the county from which the appeal was taken, and such judgment shall be entered by him, either during term or in vacation, as a substitute for the original judgment or order, and process issued for the enforcement of the same whenever requested by the party entitled thereto, unless stayed by appeal.”
The supreme court is authorized by statute to reverse or *222 affirm the judgment or order below, or the part of either appealed from, or may render such judgment or order as the court below or the judge thereof should have done (Rev. '§ 3536); and where it affirms the judgment must, if the appellee moves therefor, render judgment against the appellant and his sureties on the appeal bond. Rev. § 3531. We may render a new judgment in the one case; we are required to do so in the other, if the appellee moves therefor. The general term, however, was, by the statute, only authorized to dÁreot what new judgment should be rendered, and when it did so, their order and the transcript upon which it was made were transmitted to the cleric of the county whence the appeal came, and the clerk was thereupon authorized to enter the new judgment as a substitute for the original one. The general term, therefore, erred in rendering judgment against the defendant, which error, however, this court has power to correct by ordering a new judgment here.
The finding of facts by the district court shows that the plaintiff is entitled to judgment for the sum for which the general term rendered judgment. A judgment will therefore be rendered in this court for that amount, with all costs except the costs in the general term. *
As thus modified, the judgment below is
Affirmed.