## THE STATE OF IOWA,

### DES MOINES, DECEMBER TERM, A. D. 1880.

IN THE THIRTY-FOURTH YEAR OF THE STATE.

PRESENT:

Hon. AUSTIN ADAMS, Chief Justice.
" WILLIAM H. SEEVERS,  ⎫
" JAMES G. DAY,          ⎪
" JAMES H. ROTHROCK,   ⎬ JUDGES.
" JOSEPH M. BECK,        ⎭

---

## HAINES & LYMAN v. LEWIS.

1. **Contract:** ILLEGAL CONSIDERATION: PUBLIC POLICY. A contract conditioned for the execution and deposit of certain promissory notes by one under sentence for the commission of a crime, to be delivered to the prosecuting witness upon certain conditions, one of which was that the maker should receive a pardon or be acquitted on a re-trial, was held illegal and void as against public policy.

*Appeal from Poweshiek Circuit Court.*

### TUESDAY, SEPTEMBER 21.

ACTION to recover the value of a certain promissory note executed by one Danforth and made payable to the order of

the plaintiffs, and placed by Danforth in the hands of the defendant, under an agreement, as is alleged, that it should be delivered to plaintiffs; also to recover certain money paid to defendant by Danforth upon a certain other note of a similar character, placed in defendant's hands, as is alleged, under a similar agreement.   The defendant admits that he holds said note and money, but denies the alleged agreement.   He avers that the note was deposited with him, and the money paid to him, by Danforth, to be delivered to the plaintiffs only in case one Ellen Patterson, a client of the plaintiffs, should sign a petition to the governor asking for the pardon of Danforth for an offense for which he had been convicted and sentenced to the penitentiary, and in case such pardon should be refused, and the action should be appealed, and the judgment reversed, the said Ellen Patterson would forbear to prosecute, and said Danforth should be discharged.

There was a trial without a jury, and finding of facts which are, in substance: that Danforth, the principal maker of the notes, had, at the time the notes were made, been convicted of having sexual intercourse with one Ellen Patterson against her will, and by administering drugged whiskey, and had been sentenced to the penitentiary for ten years; that a civil action had also been commenced by Ellen Patterson for the recovery of damages; that the plaintiffs acted as her attorneys; that the defendant acted as the attorney of Danforth; that soon after Danforth was convicted and sentenced steps were taken to procure his pardon; that at the same time negotiations were entered into between Danforth and the prosecutrix to secure her signature to the petition for a pardon; that these negotiations embraced also the compromise and settlement of the civil action; that they resulted in an agreement that Danforth should execute nine promissory notes, with sureties, amounting in the aggregate to $750, and that the prosecutrix should sign a statement to the governor to the effect that Danforth had settled with her for the wrongs done to her as fully as he was able to under the cir-

cumstances, and that, taking into consideration the condition of his family, she was willing and desired that he should be pardoned; that the notes were executed, but two of them, amounting to $150, were executed payable to the plaintiffs instead of to the prosecutrix, and were designed to cover the fees due from her to the plaintiffs as her attorneys; that all the notes, both those made payable to the prosecutrix and those made payable to the plaintiffs, were deposited with the defendant under an agreement made by all the parties concerned that the defendant should hold them until it should be determined whether Danforth would be sent to the penitentiary; that in case he was pardoned the two notes made payable to the plaintiffs were to be delivered to them, and in case he was not pardoned and the judgment should be reversed upon appeal, and Danforth should be finally discharged, then the notes made payable to the plaintiffs should be delivered to them, but if Danforth was finally sent to the penitentiary they should never be delivered; that the statement to the governor which was to be signed by Ellen Patterson was signed by her, but the governor refused to grant a pardon; that the action was then appealed, and the judgment reversed. The court found, also, that by the opinion of the Supreme Court, to which reference is made in the finding, Danforth was discharged and released from further prosecution; that one of the notes made payable to the plaintiffs Danforth took up by paying into the defendant's hands the amount thereof; that the defendant refuses to pay the money to the plaintiffs, and refuses to deliver to them the note not paid.

The court rendered judgment for the plaintiffs for the amount claimed. The defendant appeals.

*John F. Lacey*, for appellant.

*Haines & Lyman*, for themselves, appellees.

ADAMS, CH. J.—I.  The plaintiffs' action is based upon an alleged agreement upon the part of the defendant to deliver to them the two notes made payable to them and placed in defendant's hands.  With whom such agreement was made does not appear from the petition.  If it was made solely between Danforth and the defendant, then the defendant was solely Danforth's agent or bailee, and the delivery by Danforth to his own agent or bailee was not such delivery as would put the notes in force.

1. CONTRACT : illegal consideration : public policy.

But if the petition had averred an agreement between the defendant and plaintiffs, they would still not be entitled to recover, unless the agreement was of such a character that we could properly enforce it.

The defendant insists that we cannot, for the reason that it would be against public policy to do so.

It is the right of the State to have the unbiased testimony of all its witnesses in every criminal prosecution.  If the tendency of such agreement would be to defeat such right, it cannot be upheld.

All the notes, including those made payable to the plaintiffs, were executed for the benefit of Ellen Patterson, the prosecuting witness in the criminal case.  From the time they were executed and deposited she had a direct pecuniary interest not only in securing Danforth's pardon, but in case that was refused, and the case was reversed and remanded for another trial, in securing his acquittal.  From most criminal acts there arises a civil liability, and the person injured is often the prosecuting witness.  If the prosecuting witness and defendant can stipulate for the deposit of promissory notes or other property by the defendant, to be delivered to the prosecuting witness in settlement of the civil liability in case the defendant escapes conviction, and not otherwise, and the courts will enforce such stipulations, it appears to us that such would become a favorite arrangement upon the part of the injured person to enforce the discharge of the

civil liability, and upon the part of the defendant to defeat the administration of criminal justice.

In this case, it is true, that there had already been a conviction, and it was hoped that a pardon would be secured, but the possibility of a failure to secure the pardon, and of a reversal by the Supreme Court, and another trial below, we think, must have been contemplated by Danforth, and constituted a part of his motive in executing and depositing the notes. The well known high character of the plaintiffs precludes us from supposing that they deliberately lent themselves to a scheme to defeat the administration of criminal justice in order to secure a private advantage. It seems probable to us that in their minds their private advantage was conditioned merely upon the contingency of Danforth's escape from imprisonment. But no honesty of intention upon their part would justify us in adopting a rule which would allow persons charged with crime to practically buy up the witnesses for the State.

In our opinion the judgment of the Circuit Court must be

REVERSED.