Bichardson, J.,
delivered the opinion of the court:
In August, 1876, the claimant entered into two contracts with the defendants, one to furnish corn to the quartermaster’s department of the Army atBinggold Barracks, Texas, and the other to furnish hay to the troops, depots, and garrison of or at the military post of Fort Brown, Texas.
This action is brought to recover damages for alleged breaches on the part of the defendants in not receiving and accepting all the corn and hay contracted for which the claimant was willing and ready to furnish. He has been paid for all that was actually delivered and accepted.
The claimant sets forth in his petition, among other matters, that on or about the 6th day of May, A. D. 1876, he entered into a verbal agreement with Charles Andre and William Kelly, which on or about the 1st day of July, 1876, was reduced to writing and signed by the parties thereto, of which the following is a ■copy:
“Brownsville, Texas, May 6,1876.
“ Articles of agreement made and entered into between Charles Andre, H. M. Field, and William Kelly, all of Brownsville, Texas, this 6th day of May, A. D. 1876.
“Whereas the proper military officers of the Dnited States in the Department of Texas have caused advertisements to be made that proposals from intending contractors for the required transportation and supplies needed for the troops at the posts of Fort Brown, Binggold Barracks, and Fort McIntosh during the fiscal year ending June30,1877, the before-mentioned Andre, Field, and Kelly do hereby mutually covenant and agree to and with each other that they will bid in the name of either of the parties, as may hereafter be agreed upon, for the furnishing of the said transportation and supplies, and that if they or either of them should be successful in obtaining any or all of the contemplated contracts, that such contract shall be held and operate d for their mutual benefit in equal proportion, provided that for all advances in cash made by any one of the said parties, interest at the rate of one per cent, per month shall be allowed and paid to the party so advancing for such ad- *444 vanees before any division of profits shall be made; and for the faithful performance of the foregoing we hereby bind ourselves, our heirs and administrators, in the penalty of damages..
“ Witness our hands at Brownsville, Texas, aforesaid, the day and date first herein written. . '
“Charles Andre.
“H. M. Field.
“WilliAM Kelly.”
It is found by the court that this agreement was made in good faith by the contracting parties, for the purpose of raising-money to carry on the contracts with the government, and not for the purpose of influencing- the bidding therefor or otherwise to prejudice the United States; that it was carried out in like good faith without injury to the defendants, and that it does not appear that any objection thereto was made by any officer of the government.
The counsel for the defendants now insists that this agreement was a transfer of the contracts or an interest therein which, of itself, caused the annulment of both contracts so far as the United States are concerned, and bars the claimant from maintaining an action thereon for damages on account of nonperformance by the government, under the following section of the Revised Statutes:
“ Sec. 3737. No contract or order, or any interest therein shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far .as the United States are concurred. All rights of action, however, for any breach of such contract by the contracting parties are reserved to the United States.
The cases of Wheeler v. The United States (5 C. Cls. R., 504),. Wanless v. The United States (6 ib.,123), and Francis v. The United States (11 ib., 638), are. relied upon in support of this objection to the claimant’s right to maintain his action.
There is an important distinction between those cases and the present one. In each of the reported cases the contractor was a merely nominal party who never himself performed or attempted to perform the contract, but so transferred it as to substitute the assignee in his place as the real party in interest throughout.
In Francis’s Case (11 ib., G38) we held that an irrevocable power of attorney given by Francis, the contractor, after the making of *445 bis contract, to one Myrick “to take and receive all vouchers and the same sign and draw the money thereon,” under the circumstances of that case constituted an assignment. But the attending circumstances were these: Myrick not only did all the work, delivered all the wood contracted for, and received all the money paid by the defendants, but brought his action in this court, and alleged in his petition, what does not appear in the case as reported, that—
“ For a valuable consideration to him paid by Nathan Myrick, he did sell, assign, and transfer to said Myrick all thatportion and interest in said contract relating to or pertaining to furnishing wood for Fort Bansom, Dakota Territory; and that he did then and there authorize and fully empower said Nathan Myrick to execute and perform that portion of said contract and receive the pay and compensation therefor from the United States in the same manner that he could have done if said assignment had not been made and said power given.”
Thereby referring to the power of attorney which was proved. Moreover, it appeared that with the giving of this power of attorney Francis wholly disappeared from the case and Myrick became the only person having further dealings with the government officers concerning the business.
But this case is different. The claimant, Field, seems to have been a bona fide contractor who gave his time and attention "to the business, and assumed and undertook all the responsibilities which he had agreed to take with the United States. The agreement with his associates was for the honest purpose of uniting capital in order to obtain the means necessary to fulfill the contracts with the government, and not with the design of avoiding personal responsibility himself' or of screening his associates from liability. Besides, this agreement was entered into before the making of the government contracts and constituted rather articles of copartnership than an assignment or transfer. Since the execution of his contracts the claimant has made no transfer of any interest therein. (Gordon v. Dalby, 30 Iowa, 223.)
The statute provision is a stringent one. It was enacted in time of war when stringent measures were deemed of pressing necessity. It first appeared in the Act of 11th July, 1862 (12 Stat. L., p. 596, § 14, ch. 200), relating mostly to the Army, and had reference, no doubt, principally to Army and Navy contracts, although general in its language. It was followed by *446 another section, to which it was an important and material accompaniment, and which is significant of the principal object to^ which it was directed. It was as follows:
“ Sec. 16. That whenever any contracQu’ for subsistence, clothing, arms, ammunition, munitions of war, and for every description of supplies for the Army or Navy of the United States, shall be found guilty by a court-martial of fraud or willful neglect-of duty, he shall be punished by fine, imprisonment, or such other punishment as the court-martial shall adjudge; and any person who shall contract to furnish supplies of any kind or description for the Army of Navy shall be deemed and taken as a part of the land or naval forces of the United States, for which he shall contract to furnish supplies, and be subject to the rules and regulations for the government of the laud and naval forces-of the United States.”*
This section seems to have been regarded by Congress as applicable only to times of war; and in revising the statutes in 1874 it was omitted from the revision and repealed. Such, however, was the law when each of the contracts in tine cases relied upon by the defendants’ counsel, and already referred to, was executed and was taken into consideration by the court in determining the construction to be given to the section prohibiting assignments in reference to those contracts. That provision was not in force when the present claimant entered into his contracts.
As the agreement between the claimant and his associates was a partnership arrangement, made before the execution of the contracts with the government, and the court has found that- it was made in good faith and not for the purpose of influencing the bidding or otherwise to prejudice the United States, Ave are of opinion that it is not a transfer which annuls the contract within the meaning of section 3737 of the Revised Statutes.
On the merits, so far as any question of law is involved, the contiwersy between the parties groAVS out of that part of each contract by which the quantity of corn or hay to be furnished and received was fixed or might be determined, and relates to the measure of damages.
In contracts made in the usual form, between individuals, Avhere the parties agree, the one to sell and the other to receive and pay for a fixed and certain quantity of goods, and the con-tractorprocures and tenders the goods and they are not accepted, the measure of damage is the difference between the contract *447 price and tbe amount for which he sells them in open market,, and in good faith, for account of his purchaser. If he retains and uses the goods himself, then it is the difference between the contract price and the value to him, or the market value if there'be any, according to the circumstances. If the goods are of no value to the contractor and he is unable to obtain anything for them by sale, and they are a total loss, then it is the whole contract price without deduction.
If before tender, but after, the contractor has incurred expenses and made more or less progress towards fulfillment on his part, he is notified that the goods will not be received, and he proceeds no further, the measure of damage is his losses incurred and his gains prevented.
In each and every case the principle is that the contractor must be fully indemnified for the damage caused to him by the action of the other party, in both profits and losses.
But in many and probably in most of the Army contracts of the United States, for supplies and transportation, there is introduced an element of uncertainty as to the quantity of goods or amount of service which may be required.
In the claimant’s hay contract it is provided that he is to “ deliver to the troops, depots, and garrison of or at the military post of Fort Brown, Texas, all thehay, be the same more or less, that shall be required thereat by the proper military authorities, for and during the fiscal year ending June 30, 1877.”
That the parties contemplated and provided for an increase of an uncertain quantity much larger than that which would be admissible under the words “more or less” as ordinarily interpreted in such an agreement, is shown by the following clause of the contract:
“It is understood that if the quantity of hay required shall exceed the quantity hereinabove written, then thiyty days’ notice in writing, before November 1, 1876, shall be given to the said party of the second part for any additional quantity required.”
So by the corn contract, the claimant was to furnish—
“ Nine hundred and eighty-eight thousand pounds, more or less, of good, merchantable corn, # * * the increase in said quantity not to exceed one-third of aforementioned quantity, between the 1st day of July, 1876, and the 30th day of June, 1877, at such times and in such quantities as the receiving officer may require for the wants of the post during the fis. cal year.”
*448 We find similar provisions, in different forms of language, in other Army contracts which have been the subject of litigation in this court. (Grant’s Gase, 1 C. Cls. R., 61, and 7 Wall., 331; Bulkley’s Gase, 7 C. Cls. R., 543, and 19 Wall., 37; Brawley’s Gase, 11 C. Cls. R., 522, and 96 U. S. R., 168; Parish’s Gase, 12 C. Cls. 609, and 100 U. S. R., 500; Merrlam’s Gase, 14 C. Cls. R., 290; Baldwin’s Case, 15 ib., 297.)
In cases of this class the main object is to provide for all the supplies or service which the wants of the Army at the particular places named may require.
As it is not possible always to know in advanpe exactly what those wants may be, an approximate quantity or amount is inserted, and any variation of increa.se or decrease is left to be determined by future circumstances.
The risk arising from this uncertainty is shared in part by each party to the contract, and each is bound to act in good faith towards the other, to exercise due diligence, and to keep himself and the other party informed of whatever facts within the means of his own knowledge and information may contribute towards rendering certain that which is left undetermined.
It is the duty of the contractor to make inquiries at the proper times and of the proper officers, and of the officers to inform the contractor by direct orders, in reasonable time, of what the requirements prove to be. When the contractor is formally notified to supply a quantity or amount, he is justified in proceeding to incur expenses and in making arrangements to comply with the terms of the order. Bat as the main object is to supply the wants of the Army at the post or place designated, and no more, the receiving officer, or other officer representing the United States, may change or revoke his orders at any time when he finds that he has overestimated the quantity or amount which will ultimately be required. The rule of damage is then somewhat .different from that in other cases. The contractor will lose iiis anticipated profits, and the government will be subjected only to the payment of the cost and expenses which its officers have needlessly cast upon him.
The measure of damage is this: For such supplies as the contractor had on hand ready to deliver, and as to which, in consequence of the defendants’ notices, he had incurred substantially all the cost, expenses, and trouble which he would have been subjected to if the supplies had been accepted, and little or *449 no tiling remained to be done except tlie formal tender of tbe goods, he is entitled to recover under the general rule his profits as well as his losses, precisely as though a tender had previously been made, or as though the goods had been actually needed. As to that, the contractor may be considered as having substantially fulfilled his agreement and entitled to his profits without diminution. For his preparation and progress toward furnishing other supplies not in condition, or, not substantially, ready for delivery, he is entitled to recover the cost, expenses, and losses actually incurred, but nothing for prospective profits. The loss of anticipated profits is the result of the risk which the contractor takes on his part from the uncertainty as to the quantity which may ultimately be required; an uncertainty which both parties know from the beginning to be involved in the contract.
These principles of the measure of damages are deducible from the decisions of this court and of the Supreme Court in the cases already cited, and reconcile them with each other and with the general rules of the common law applicable to contracts.
Applying them to the present case, we find that the claimant is entitled to recover the sum of $3,989 under the first cause of action set forth in the findings, upon his contract for the delivery of corn, that being the difference between the contract price of the 6,044 bushels of corn which he had ready for delivery when the order reached him that no more would be received and the net amount which he received from the sale of it.
Under the, second cause of action, upon his contract for the delivery of hay, the claimant is entitled to recover $153.50, which is the difference between the contract price of the ten tons of hay which he had on hand for delivery when the notice reached him that no more would be accepted and the net amount for which he sold it.
For his preparations towards procuring hay which he never had ready for delivery he can recover nothing, because he has proved neither the expenses actually incurred nor the extent of his liabilities entered into on that account, if any.
The court, from vague and uncertain evidence, cannot undertake to estimate the amount of possible or probable expenses incurred which are not proved, nor the amount of unascertained and unliquidated damages which the claimant may be liable *450 for to other parties on account of engagements entered into by him in the course of preparations made toward fulfilling Ms contract.
The claimant must prove his case. The burden of proof is upon him. If he fails to sustain it, the fault or the misfortune is his own, and he must abide the consequences.
Judgment will be entered for the claimant for the sum of $4,142.50.