# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

#### JUNE TERM, 1863.

~~~~~~~~~~~~~~~~~~~~~

JOSIAH F. MUIR, appellant, and THE NEWARK SAVINGS IN-
STITUTION and others, respondents.

1. If an agent, in making a loan of money, accept from the borrower a
bonus beyond the legal rate of interest, such act of the agent will not
render the contract usurious, if the bonus was taken without the know-
ledge of the principal, and was not received by him.

2. The reservation of interest for money actually on hand and subject to
the call of the borrower, during the time he is engaged in completing his
securities, is not usurious.

3. The essence of the offence of usury is a corrupt agreement to contra-
vene the law. Any contrivance to evade the statute, and to enable the
lender to receive more than legal interest for his money, renders the con-
tract a corrupt one. And the law will infer the corrupt agreement, when it
appears by the face of the papers or otherwise, that illegal interest was in-
tentionally reserved, although the illegality arose from a mistaken construc-
tion of the law.

This was an appeal from a decree of the Chancellor. The appeal was argued by

*Zabriskie,* for appellant.

*Hubbell, A. Mills,* and *C. Parker,* for respondents.

The opinion of the court was delivered by

ELMER, J.    The bill filed by the Newark Savings Institution, is the common bill for the foreclosure and sale of certain mortgaged premises, to pay the balance claimed to be due from the appellant on his bond and mortgage, bearing date July 1st, 1850. To this bill the executor of Abraham Brittin, deceased, was made defendant, so that the amount due on a bond and mortgage given by the appellant to the said Brittin for $3000, dated February 10th, 1859, might be included in the decree. The executor answered, and prayed to have a decree for the sale of the property, and the payment of the principal and interest due on the mortgage. The appellant, in his answer, set up the defence of usury as against both debts.

As to the bond and mortgage to the Savings Institution, the usury is alleged to have arisen in two ways. First, he says that it was agreed between him and William B. Mott, acting for and on behalf of the complainants, that they would loan to said defendant the sum of five thousand dollars, upon condition that defendant would pay therefore the sum of one hundred dollars, which he avows he did pay to said Mott, at or about the time of the delivery of said bond and mortgage. And secondly, he says, that the said bond and mortgage bear interest from, and are dated July 1st, but that the money was not actually paid over by complainants, or received by defendant, until the ninth of said month.

We are not satisfied that the first ground of usury thus set up, is proved to be true. The defendant himself swears to the facts; but although the statute has made him a competent witness, his credibility is open to question, and we do

not feel justified in deciding that a debt, secured by a bond and mortgage shall be discharged by the uncorroborated oath of the party who has made and is bound by them.    In this case, it appears that he has paid the interest for many years, and a part of the principal, and made no complaint of usury during the lifetime of Mott, who alone could contradict him.    But if he did pay a *bonus* of one hundred dollars to Mott to obtain this loan, as he alleges, there is not only no evidence that he had any authority from the institution to receive it, or that the other members of the funding committee, by whose concurrence the loan was made, had any knowledge of the transaction; but it is proved that they were ignorant of it, and that no part of the money went into the funds of the complainants.    This ground of usury, therefore, entirely fails.

It appears, as to the second ground, that the money was not in fact paid over to the defendant until the tenth of July, and that Mott, who was treasurer, and as such one of the funding committee, made an entry in the books of the institution, as follows : " 1850, July 3d, bond and mortgage account, Dr. to cash for Josiah F. Muir's bond and mortgage on property at Chatham, N. J., $5000."

It is insisted for the appellant, that it thus appears the bond and mortgage were made to bear interest several days before the loan was made, and that this was such an intentional violation of the law, as to amount, whatever may have been the motive of the parties; to a corrupt agreement, and was therefore usurious.    The essence of the offence of usury is a corrupt agreement to contravene the law.    Any contrivance to evade the statute, and to enable the lender to receive more than legal interest for his money, undoubtedly renders the contract a corrupt one.    And there is no doubt that the law will infer this corrupt agreement, when it appears by the face of the papers or otherwise, that illegal interest was intentionally reserved, although the illegality arose from a mistaken construction of the law.    So it was held in the cases to which we were referred.    *Marsh* v. *Martindale, 3 Bosan.*

& Pull. 154; Bank of Utica v. Wager, 2 Cow. 712, and other New York cases of a like nature; Bank-of Maine v. Butts, 9 Mass. 49; Williams v. Williams, 3 Green's R. 255.

But in the case before us there was no contrivance to evade the statute, nor was illegal interest intentionally reserved. The appellant's own statement is, that he entered into an agreement with the funding committee to take the money, and that they had it on hand subject to his disposal, before the first of July, and that the delay occurred in having the security prepared and executed. The entry in the books of the institution, of the loan on the third of July, cannot be regarded as conclusive proof that the agreement was not entered into at an earlier date. As the case is presented, we think we are fully justified in considering that it was; it being apparent that there was no design on the part of either lender or borrower, to take or to allow illegal interest. No case has been produced, which has held it to be illegal to reserve or take interest for money actually on hand and subject to the call of the borrower, during the time he is engaged in completing his securities. In the case of Keyes v. Moultrie & Palmer, 3 Bosw. 1, the Superior Court of New York decided, we think correctly, that a contract of this character is not usurious. We are, therefore, of opinion that the decree of the Chancellor, ordering an account to be taken of the amount due on the complainant's bond and mortgage, is correct, and must be affirmed.

As to the Brittin mortgage, the allegation is that it was given to secure a loan of three thousand dollars, and that said loan was made upon express condition that the appellant should take, as a part thereof, a horse at the price of five hundred dollars, and that said horse was not worth more than two hundred and sixty dollars. If these allegations were proved, the defence would be complete. But we are not satisfied that they are. This defence, like that in the case of the Savings Institution, is set up after the death of the party with whom the contract was made. The evidence relied on consists of the appellant's own statements, not made on oath, and some

of which were clearly incompetent. There is no satisfactory evidence of the material allegation that the taking of the horse at the price named was a condition of the appellant's obtaining a loan. It appears that he signed a receipt, that he had received Brittin's check for $2000, three notes of other parties amounting to $540.02, and a four year old stud colt, $500, for which he had given his bond and mortgage for $3000, and his note for $40.02; but this receipt does not show that the taking of the notes and the horse was not at his own request. It was insisted that the situation of the appellant was such that we ought to infer that he could not have desired to purchase such a horse. Such an inference, we think, would be very unsafe, and would amount to the substitution of conjecture for proof. Nor is the evidence that the horse was not worth the money agreed to be paid for him, at all conclusive. Several witnesses, it is true, rated him at from $125 to $200; but the little reliance that can be placed on such estimates is shown by the fact, that although the horse was stolen shortly after the purchase, and considerably injured, he was actually sold for $260. He was certainly a horse of rather remarkable beauty, and several good judges testify that he was worth $500. The appellant himself stated, at the time he was stolen, that he was a valuable horse, worth $500 or $600. We think the Chancellor's order that an account be taken of the amounts due on this bond and mortgage was correct, and that the whole decree must be affirmed.

The decree of the Chancellor was affirmed by the following vote :

*For affirmance*—Judges BROWN, COMBS, CORNELISON, ELMER, FORT, HAINES, KENNEDY, OGDEN, VREDENBURGH, WALES, WOOD—11.

*For reversal*—NONE.