THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE and THE
NEW YORK AND NEW JERSEY WATER COMPANY, com-
plainants-respondents,

*v.*

THE MAYOR AND COUNCIL OF THE BOROUGH OF NORTH ARLING-
TON, defendants-appellants.

[Submitted November 17th, 1910. Decided March 6th, 1911.]

1. Where a corporation asks a court of equity to restrain a munici-
pality from interfering with it in the excavation of a public highway for
the purpose of laying a water pipe across it as a part of a pipe line
system, the corporation must show a legal right to use the street for the
purpose intended.

2. The right to regulate is not limited to mere supervision of the
method of excavation, but implies the power to prohibit the disturbance
of the public easement by one who has no lawful right to do it.

3. A permit to lay water pipes in a public street can only be claimed
by one legally entitled to use the street for such purpose, and if one,
without such right, attempts to excavate a street for such purpose a court
of equity will not restrain a municipality having the power to regulate
the use of streets from forcibly preventing the disturbance of the public
easement.

4. Assuming that a permit should be granted, upon reasonable condi-
tions, to one lawfully entitled to lay such pipe in a public highway, the
prevention of such use of the highway by one without a legal right is a
lawful exercise of the power to regulate the use of such a highway.

On appeals from an order and decrees of the court of chancery
advised by Vice-Chancellor Howell, whose opinion is reported in
*77 N. J. Eq. (7 Buch.) 166.*

*Mr. John N. Bell* and *Mr. Warren Dixon,* for the appellants.

*Mr. Daniel J. Murray,* for the city of Bayonne, and *Messrs.
Collins & Corbin,* for the New York and New Jersey Water Com-
pany, respondents.

The opinion of the court was delivered by

BERGEN, J.

By an agreement dated September 6th, 1894, William DeH. Washington and Turner A. Beall entered into a contract with the city of Bayonne to furnish water to the city for public and domestic uses, to be delivered into a system of pipes then constructed, or to be constructed, by the city; under this agreement the pipes required were laid by the city, and the contract having been assigned to it April 30th, 1895, by Washington and Beall, the water contracted for has since been supplied by the New York and New Jersey Water Company, one of the complainants in this suit.

In June, 1904, the common council of the city of Bayonne adopted an ordinance which was duly approved by the mayor, granting to the complainant water company the right to lay and operate water mains, not exceeding two, across the city "to and continuing under the waters of the Kill-von-Kull to the boundary line of this city," in consideration of an offer by the New York and New Jersey Water Company that it would at its own cost and expense and without the expenditure of any money by the city, lay water mains in and through certain streets and avenues of the city for the purpose of "conveying water to and throughout the city as well as beyond the city, and also erect and maintain, at its own cost," a certain number of fire hydrants, and furnish therefrom water without cost to the city "for the purpose of extinguishing fires and street sprinkling purposes," and pay to the city a sum equal to $5 per million gallons for each and every million gallons of water "that may be conveyed by said mains beyond the city." This ordinance was duly accepted by the water company on June 28th, 1904, and was by it, November 30th, 1904, assigned to the Richmond Water Company, the latter company being subsequently succeeded by the Hudson County Water Company, by which the pipe across the city to the Kill-von-Kull was laid. In May, 1905, the Hudson County Water Company entered into a contract with the city of New York under which it agreed to furnish water from New Jersey to the borough of Richmond, Staten Island, in the manner described

in the opinion written for this court by Chancellor (then Mr. Justice) Pitney, in *McCarter, Attorney-General,* v. *Hudson County Water Co., 70 N. J. Eq. (4 Robb.) 695,* but as the result in that case was a decree enjoining the Hudson County Water Company from carrying or transporting any of the waters of the Passaic river out of the State of New Jersey, that scheme failed.

The New York and New Jersey Water Company are now installing a pipe-line system from Belleville to the city line of Bayonne, and there propose to connect it with the main or mains which run through the city of Bayonne to the Kill-von-Kull, laid by the Hudson County Water Company as part of its former plan to carry water out of this state, and the replication, filed in this cause by the complainants, admits that if any water be supplied from any new or additional source than that which is now being supplied to the city of Bayonne by the water company, it will be subterranean water pumped from wells.

By an agreement, dated June 7th, 1909, between the New York and New Jersey Water Company and the Hudson County Water Company, it was agreed that the water to be furnished for delivery in the city of New York through its pipes under the Kill-von-Kull might be

"subterranean water drawn from wells owned or controlled by the party of the second part at Belleville, New Jersey, or elsewhere, and shall not be mixed or commingled with any water from surface sources in the State of New Jersey unless the said state, by action of its legislature or its courts, or otherwise, shall permit the transportation from the state of water so commingled."

The right of the complainants to lay the pipe in question is rested upon the statute of 1888 (*Gen. Stat. p. 2210 § 405*), which authorizes any city to contract with a water company or other company, contractor or contractors, for furnishing a supply of water "for the purpose of extinguishing fires and such other lawful uses and purposes as may be deemed necessary." That under this act the city of Bayonne may contract for a supply of water for the purposes authorized by it was determined in *Brady* v. *Bayonne, 57 N. J. Law (28 Vr.) 379,* but the act by its terms limits the power to *lawful uses and purposes,* and a

contract requiring the laying of a pipe of sufficient size to supply not only the contracting city but a municipality of an adjoining state, without authority of law to use it, for the purpose of exporting water out of the state, cannot be considered a contract limited to supplying the contracting city with a supply of water for the purpose of extinguishing fires and other lawful uses and purposes, because it compels and authorizes a conduit larger than the needs of the city demand.

All of our statutes conferring the power to lay pipes in the public highways have reference to the supplying of municipalities within this state, and that it is against the public policy of the state to export any part of our potable water to another state has been manifested by adverse legislation. *P. L. 1905 p. 461; P. L. 1910 p. 148.* If the right of a water company to burden the public easement by laying water pipes or mains in the street of one municipality depends upon a contract with another municipality to supply it with water, it is subject to the legal right of the contracting city to make the contract relied on, and the city of Bayonne has shown no legislative authority to contract for a supply of water beyond its own need, and complainants have not called our attention to any statute which authorizes Bayonne to contract for the laying of pipes, in adjacent municipalities, sufficiently large to supply water to the borough of Richmond. If the city of Bayonne was attempting to condemn lands for the purpose of providing a supply of water for the borough of Richmond could such a proceeding be sustained? We think not, because it has no power to contract for land for such use and could not make any legal attempt to agree with the owner, and, therefore, the power of eminent domain which the city conferred upon the water company in aid of the present contract will not support or strengthen that part of it which provided for supplying the borough of Richmond.

The facts displayed in this record lead to but one conclusion, and that is that the contract under which the water company is laying its main from Belleville to Bayonne, and there connecting it with the pipe or main of the Hudson County Water Company leading to the Kill-von-Kull, has for its principal object the

transportation of subterranean waters from this state to the State of New York without, so far as we can discover, any lawful right to do so. Such right is not claimed in the brief of the counsel of complainants, but on the contrary it feebly disavows such purpose, and urges that the defendants have utterly failed to prove that it is intended to transport water to Staten Island or elsewhere out of the State of New Jersey.

The present controversy arises over the refusal of the mayor of North Arlington to allow the water company to lay its water main, a part of the proposed system, across a highway in the borough of North Arlington known as the River road. Among the powers conferred upon the borough of North Arlington (*P. L. 1897 p. 285 § 28*) is that of passing and enforcing ordinances

"to prescribe the manner in which corporations or individuals shall exercise any privilege granted to them in the use of any street, road or highway, or in digging up the same for any purpose whatever,"

and under that power the common council of North Arlington adopted an ordinance which declared

"that no person or corporation shall dig up, under, over or through the public places, avenues, streets or highways of said borough, or upon the same, at any place, at any time, for any purpose whatever without a permit so to do first obtained, signed by the mayor and attested by the clerk of the borough."

Complying with this ordinance, and on January 5th, 1910, the defendant water company filed with the mayor of North Arlington an application for a permit, which, after reciting that the water company had a contract for supplying the city of Bayonne with water, and was then engaged in building a pipe line for that purpose which would necessarily cross River road and two other avenues in the borough, asked for a permit to dig up and open River road

"for the object of laying said water pipe across and under the same * * * in such manner as not to interfere with public travel or with any present constructions in or under the road."

This the mayor refused

"because the resolution of the city of Bayonne, under which you claim to be working, which provides that the pipe be of an estimated capacity sufficient for the present needs and future requirements of the city of Bayonne, as well as for the proposed service to the borough of Richmond (New York) clearly indicates to my mind that the city of Bayonne has a sufficient supply of water for its present and future needs, and that the real object of the contract entered into with Bayonne for an alleged emergency supply is to enable you to convey potable waters of this state through the said pipe line across River road, Kearny avenue and Schuyler avenue to the city of Bayonne, and thence to the Kill-von-Kull, and under the same to the borough of Richmond, in the city of New York."

Notwithstanding the refusal of such permit, the water company undertook to lay the main, and such action being prevented by the physical opposition of the municipal authorities, the bill of complaint was filed in this cause and a preliminary injunction ordered, restraining the municipality from interfering with the company in the laying of the pipe. From this order an appeal was taken, pending which the carrying out of the order for a preliminary injunction was suspended by this court, and the cause then proceeded to final hearing, resulting in a decree for a permanent injunction preventing such interference, from which decree the defendants also appealed. As the disposition of one appeal will control the other, they were argued together and will be considered and disposed of as one.

The learned vice-chancellor was of opinion that the conditions which may be imposed in granting such an application are those only which are necessary for the proper protection of the borough and its public highways, and that it "has no right to impose conditions which do not tend towards the protection of the interests which the borough has as guardian of the public easement in its highways," and also that the reasons assigned by the mayor were not sound in law, nor well founded in fact, and that it was an arrogation of power not within the scope of the duties of the mayor to say that no potable waters which originate in New Jersey shall be transferred beyond its boundaries. We think the learned vice-chancellor accorded to the mayor's objection a too limited construction, and that it should be taken to rest upon the ground that the water company had no lawful

right to disturb the public easement because the laying of the pipe was not justified by any legal right.

It cannot be successfully contended that any person or corporation may excavate a public highway and place therein pipes or conduits without legislative or municipal authority, and so it would not be consistent with the principles of equity jurisprudence to say to any municipality, as was in effect said by the learned vice-chancellor, that whether the purpose for which a permit is sought is lawful or not is of no concern to it.

The right to a permit which may be imposed under a power granted to regulate streets is limited, as was said by Mr. Justice Swayze in *Cook* v. *North Bergen, 72 N. J. Law (43 Vr.) 119;* affirmed in this court on his opinion (*73 N. J. Law (44 Vr.) 818*), "to anyone legally entitled thereto," and a power to regulate includes by implication the power to prohibit the violation of proper regulations, otherwise the power of regulation would be nugatory; therefore, assuming that a permit should be granted upon reasonable conditions to one lawfully entitled to lay a pipe in a public highway, the prevention of the use of the highway by one without a legal right is a lawful exercise of the power to regulate. That it is the object of the water company to use the pipe in question for the purpose of transporting potable water from this state to the city of New York, which is at present forbidden by our statutes, is plainly shown by the record in this case. The application filed by the water company recites as a ground for its right to a permit for laying the pipe, that it had a contract for supplying the city of Bayonne with pure and wholesome water, but it omits to state the whole truth, as will appear from an examination of the contract upon which it rests its right to the permit. The contract is made up of an ordinance, adopted by the city, accepted and made a contract by the water company, and a resolution adopted by the city October 5th, 1909, according to which the water company was notified by the city of Bayonne that it required the construction

"of a second or duplicate main to extend from Kearny and Belleville, New Jersey, to Avenue B and 56th street, Bayonne, and there to be connected with the mains of the city as well as with the main of the company leading therefrom to Kill-von-Kull, and to be used in supplying

the city of Bayonne in case of any emergency requiring the temporary closing down of the company's present supply main or interruption of the present supply, and to be not less than thirty inches in diameter (except at railroad and river crossings) and furnishing 'an estimate capacity sufficient for the present needs and future requirements of the city of Bayonne as well as for the proposed service of the borough of Richmond,' as recommended by the New York Fire Insurance Exchange."

It is under this resolution, duly accepted and made a contract between the city and the company, that the right to lay the present pipe is sought to be sustained. The agreement expressly provides that the new main shall be connected with the city main, and also with the main of the company leading to the Kill-von-Kull. While the main from the northerly boundary of the city to the Kill-von-Kull is owned by the Hudson County Water Company, and the proposed supply pipe by the New York and New Jersey Water Company, both corporations are managed and controlled by kindred interests, and that it is the purpose of the two corporations, if possible, to obtain and carry to New York, for merchandise, a part of the potable water of this state, is, as we have said, clearly demonstrated. That the principal purpose of the contract is not to furnish the city of Bayonne with an emergency supply provided for by the contract is manifest, nor is there any proof that it is needed, the only apparent consideration to the city being the supplying to the city water for municipal uses free of charge, and the tolls provided for in the agreement of $5 per million gallons, which latter profit it can only reap when water is taken out of the state, and this situation deprives it of any substantial interest in the contract except as an assistant in the furtherance of the proposed scheme to transport the water from this state to New York.

We are of opinion that under this contract the provision for an emergency supply is a subterfuge to cover the real purpose of the complainants, but granting that the city of Bayonne is entitled to lay a pipe through the borough of North Arlington for the purpose of providing Bayonne with water for an emergency supply, or other lawful purpose, its right to do so is limited to the installation of a pipe reasonably sufficient for that purpose, and it cannot take advantage of such right to lay at the same time a pipe of a capacity sufficient to supply Bayonne and

also the borough of Richmond in the State of New York, any more than it would have the right to put down two pipes in the trench proposed, one to carry water to Bayonne and the other to convey water out of the state, and so far as the contract requires the laying of a pipe sufficiently large to supply the borough of Richmond, it is *ultra vires.*

It is urged that as water cannot be lawfully transported out of the state, it will not be inferred that a wrong is intended, and therefore it is not unlawful to lay a pipe sufficiently large to supply the borough of Richmond as well as the city of Bayonne in anticipation of the removal of the present legal prohibition, but that begs the question, which is the present right of the complainants to use the highway in North Arlington in the manner proposed under the contract invoked in support of that right, for if a pipe of the size and for the purpose contracted for is not being installed by virtue of a present legal authority, the complainants have no standing in a court of equity. If the present decree and order be affirmed, a court of equity, instead of preventing, is aiding in the furtherance of a plan by which water may be transported from this state to another without sanction of law therefor, but by virtue of a contract with the city of Bayonne containing provisions for the supply of the borough of Richmond which the city has no power to make.

As complainants have not shown that they are entitled to excavate streets of North Arlington for the purpose of laying a pipe of sufficient capacity to supply the borough of Richmond with water, in addition to the supply that the city of Bayonne may need and which it may lawfully contract for, a court of equity should not exercise its power of injunction to assist them.

The order for the preliminary injunction and also the final decree should be reversed, and the bill of complaint dismissed, with costs, and it is so ordered.

No. 41—Order—

*For affirmance*—GARRISON, SWAYZE, REED, VOORHEES—4.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON —9.

No. 106—Final decree—

*For affirmance*—GARRISON, SWAYZE, REED, VOORHEES—4.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, BERGEN, MINTURN, BOGERT, VREDENBURGH, VROOM, CONGDON —9.