The bill is to foreclose a mortgage originally in the sum of $36,500 and covering a large tract of land which is divided into building lots. The mortgage contained a provision for the release of lots from the lien thereof upon the payment on account of principal of a certain sum per front foot. The mortgage was made by Globe Land Company, which in February, 1926, conveyed the mortgaged premises to Branford Land and Improvement Company subject to that mortgage and also subject to a second mortgage. Default having occurred on the second mortgage, it was foreclosed and at the sheriff's sale the defendant was the purchaser subject, of *Page 240 
course, to the first mortgage. That mortgage had previously, in 1927, while Branford Land and Improvement Company held title, been in default and was called. To avoid foreclosure $8,500 was paid by the officers of that company on account of the principal. $10,000 was promised, but only $8,500 was paid, and an extension agreement was given by the mortgagee by which default was waived and the due date of the mortgage extended to December 1st, 1931. The balance of the principal was fixed by that agreement at $28,000. The agreement contained this clause: "All the provisions of the mortgage hereinbefore mentioned and the bond accompanying same shall remain in full force and effect, except in so far as they are altered by this agreement."
The mortgage being again in default after the purchase of the premises by the defendant, the present proceeding was instituted. By its answer and counter-claim defendant sets up payment of the $8,500 by its predecessor in title and also three other payments on account of principal, two by such predecessor of $712.50 and $864.75 respectively, and one of $1,260 by the defendant, and demands releases of lots to the value of the total amount of such payments, under the terms of the release clause contained in the mortgage. The three payments last referred to were bonuses paid for extensions of the due date of the mortgage.
There are but two questions involved; first, is the defendant entitled to the release of the lots as claimed; and second, should the three payments last mentioned be credited on principal?
When the $8,500 was paid by the Branford Land and Improvement Company nothing was said about releases and I think it is obvious that none were in contemplation of the parties. The rule ofGillies v. Dyer, 93 N.J. Eq. 348; affirmed, Ibid. 635,
applies. The defendant claims that the fifth paragraph of the extension agreement above quoted takes the case out of that rule. I do not so consider it. That clause was inserted to protect the parties with respect to future acts, future payments, and not past transactions and so the parties themselves have interpreted it. No demand for *Page 241 
releases was ever made by the Branford company which made the payment, and this is a strong indication that none were ever contemplated. Not until the present suit was instituted — after the lapse of four years — was any demand by the defendant made for such releases although after taking title and before foreclosure proceedings were instituted three other releases were applied for by the defendant and obtained upon the payment of $1,650 cash on account of principal. Had defendant then thought itself entitled to releases on account of the $8,500 paid by its predecessor in title, why did it not demand them instead of paying an additional sum of $1,650 for them? It is true that the testimony of the defendant's officers is to the effect that they demanded releases in 1930 shortly after defendant obtained title, but it is not persuasive. The conduct of the parties is a sufficient interpretation of the transaction involving the $8,500 payment in so far as the releases are concerned.
Of the cases relied upon by the defendant in support of its counter-claim, none of them are controlling. In Malba TerraceCorp. v. Portaupeck Properties, Inc., 105 N.J. Eq. 453, the releases were demanded for the benefit of the purchasers of lots who had purchased before the mortgage became in default and demand was made for such releases before the commencement of the suit. Van Arsdale v. Gorenflo, 93 N.J. Eq. 486, involved the rights of a purchaser of lots who had offered to pay the release price and it was held that he was entitled to the benefit of the release clause. The prayer of the counter-claim for releases is denied.
As to the three payments for other extensions of the due date of the mortgage, they were undoubtedly bonuses although this the defendant denies. But the testimony of the complainant's attorney is conclusive on that point.
As to the payments of $712.50 and $864.75 made by the defendant's predecessor in title, if they were usurious the defendant cannot take advantage of that fact because it purchased the mortgaged premises at the sheriff's sale on foreclosure of the second mortgage subject to the first mortgage now being foreclosed. Warwick v. Dawes, 26 N.J. Eq. 548, *Page 242 556; Trusdell v. Dowden, 47 N.J. Eq. 396; Scull v. Idler,79 N.J. Eq. 466. If those payments were usurious, then, also, was the payment of $1,260 made by the defendant for the last extension agreement.
According to Sir Edward Coke "usury is a contract upon the loan of money, or giving days for forbearing of money, debt or duty." 3 Coke Inst. 150. (Italics mine.)
The term "forbearance" as used in the usury acts signifies the contractual obligation of the creditor to forbear during a given period to require of the debtor payment of an existing debt then due and payable. 39 Cyc. 941.
"The forbearance, or giving time for the payment of a debt, is in substance a loan." Diercks v. Kennedy, 16 N.J. Eq. 210;McAdams v. Randolph, 41 N.J. Law 218.
The circumstance of a man's money remaining in another's hands, in consequence of an agreement for that purpose, will equally constitute a loan. Com. Us. 157.
Any agreement intended to enable the lender to receive more than legal interest for his money is usurious. Muir v. NewarkSavings Institution, 16 N.J. Eq. 537.
The bonus payments here involved and the agreements to extend the due date of the mortgage in consideration thereof amount to "contracting for or reserving something in excess of the amount allowed by law for the loan or forbearance of money." 39 Cyc.888. The transaction was tantamount to the placing of a new mortgage (Diercks v. Kennedy, supra, and McAdams v.Randolph, supra) and was usurious. Ganz v. Lancaster,63 N Y Supp. 800; 50 N.Y. App. Div. 204. If made by an individual mortgagor they would have constituted payments on the principal debt. 4 Comp. Stat. p. 5705 § 2; Ruh v. Dwiggins, 77 N.J. Eq. 117; Lillig v. McGarrity, 107 N.J. Eq. 147; affirmed,109 N.J. Eq. 130; Spalding v. Steelman, 111 N.J. Eq. 1. But they were made by corporations not privileged to plead usury as a defense. P.L. 1902 p. 459; 4 Comp. Stat. p. 5706 § 7;Ovsiovitch v. Federal Tool and Manufacturing Co., 94 N.J. Eq. 744.
True, the "defense" of usury is not actually pleaded here; but the defendant nevertheless seeks the benefit of the act while at the *Page 243 
same time claiming the payments were not bonuses or usurious. It is not suggested that they were otherwise inhibited by law. Assuming that the act of 1902 above referred to applies, the defendant is not entitled to have these payments credited on the principal. In Grossman v. Calonia Land and Improvement Co.
(Court of Errors and Appeals), 103 N.J. Law 98, it was held that "the word `usury' in the act of 1902 should have its usual and ordinary meaning, viz., `an unconscionable or exorbitant rate or amount of interest;' * * * contracting for or reserving something in excess of the amount allowed by law for the loan or forbearance of money." In Lembeck v. Jarvis Terminal ColdStorage Co., 70 N.J. Eq. 757 (at p. 761), Mr. Justice Reed, speaking for the court of errors and appeals, said: "It is obvious, however, that the statute was passed to protect those that had made loans of money and had taken the paper or bonds of a corporation. As to such creditors it was doubtless intended to abolish the defense of usury in toto." I think it is plain, therefore, that the defendant is not entitled to the credit claimed.
Objections are made that the evidence respecting prior defaults in the mortgage, extension agreements and the bonus payments was improperly admitted by the master because not within the pleadings. Quite obviously the defendant was not surprised by this evidence and if necessary the pleadings may be amended to fit the facts. No claim is made that the evidence objected to does not paint a true picture; that it does is a sufficient reason in this court for its admission.
I will advise a decree in accordance with these conclusions. *Page 244