Defendant moves to strike the first count of the bill of complaint on the ground that it discloses no cause of action.
Complainant is receiver of Southland Distillers Distributing Company, an insolvent corporation. The Southland Company, from the time of its organization about the end of 1933, until it was adjudged insolvent in January, 1940, was engaged in the business of buying and selling warehouse receipts covering whiskey. The purchases it financed through the defendant Trust Company which took and held the receipts as collateral for the money advanced by it. Southland, in turn, contracted to sell the receipts to licensed retailers who paid for the same in installments. At the time Southland was adjudged insolvent, the defendant held as security warehouse receipts for 336 barrels of whiskey, which receipts the Distributing Company had contracted to sell and on which it had been paid by retailers a large part of the consideration. Thereafter, the defendant sold the receipts for about $14,000 which it credited on the debt due it by Southland.
Now, going back to 1935, by an amendment to the Alcoholic Beverage Law, the legislature prohibited the sale of receipts given upon the storage of alcoholic beverages, "except under and pursuant to the provisions of a warehouse receipts license issued by the Commissioner. The holder of such license shall be entitled to sell such warehouse receipts subject to rules and regulations." R.S. 33:1-72. Southland obtained a warehouse receipts license. Then the State Commissioner of Alcoholic Beverage Control in January, 1936, made a rule reading in part as follows:
"No warehouse receipts licensee shall sell or offer for sale any warehouse receipts given upon the storage of alcoholic beverages *Page 237 
unless such licensee is the owner of the receipt and in possession and control thereof at the time of the solicitation or sale. Where such licensee enters into a contract for the sale of a warehouse receipt, he must at all times during the continuance of the contract and pending consummation thereof, remain in possession and control of the receipt."
Notwithstanding this rule, the Southland Company continued to do business in the same manner as theretofore, making contracts for the sale of warehouse receipts which were not in its possession or control, but were held by the Trust Company as collateral. The bill charges that the defendant at all times had knowledge of the nature of Southland's business and maintained close supervision over its financial affairs. "Complainant alleges that the aforementioned conduct by Southland was contrary to the regulations of the Department of Alcoholic Beverage Control, that defendant, Federal Trust Company, not only knew of said unlawful conduct, but by its active aid enabled Southland to engage in said conduct."
On this state of facts, the receiver prays that the Trust Company be ordered to account to him for the proceeds of the receipts.
The first question is whether the rule relating to the sale of warehouse receipts, which I have quoted, was a valid exercise of the Commissioner's power.
Complainant, on the authority of Tucker v. Freeholders ofBurlington County, 1 N.J. Eq. 282, and decisions following it, argues that this court cannot inquire into the validity of the regulation. If an ordinance or regulation is merely irregular, it cannot be attacked collaterally; but if it is void, the rule is otherwise. When a party to a cause in this court, or in a law court, claims a title or right founded on an ordinance, or a regulation such as is here in question, the court may determine whether or not the regulation is ultra vires and void and so insufficient to support the asserted title or right. Carron v.Martin, 26 N.J. Law 594, 601; McClave v. Newark, 31 N.J. Eq. 472; Bayonne v. North Arlington, 78 N.J. Eq. 283.
The amendment of 1935, while it states that the licensee shall be entitled to sell warehouse receipts "subject to rules *Page 238 
and regulations," does not furnish a guide to the nature of such rules and regulations. The Commissioner, however, was not thereby given a free hand and an unlimited discretion in promulgating rules. His power is restricted to reasonable rules which promote the general policy of the statute or come within some express grant of authority. State Board of Milk Control v. Newark MilkCo., 118 N.J. Eq. 504, 520. But the Commissioner of Alcoholic Beverage Control has had no opportunity to be heard in this cause, and the facts which moved him to promulgate the regulation, have not been presented. In this situation, the court should not base a decision of the suit on the invalidity of the regulation, if the same decision may be reached by a different route. Let us proceed then, as if I had come to the conclusion that the regulation is valid.
It will be observed that the Commissioner's rule does not prohibit a bank from lending upon the security of a warehouse receipt for intoxicating liquor. It only prohibits the owner of the receipt from contracting to sell it while it is so held by the bank. The bill charges in effect that the Trust Company, after the Commissioner had promulgated the rule, continued the practice of lending on the security of a receipt, although it knew, or might reasonably assume from past dealings with Southland, that Southland would offer the receipt for sale and contract to sell it while it was still held by the Trust Company. I can see no impropriety herein on the part of the Trust Company, or any taint of illegality, unless it was aware of the regulation or unless it is chargeable with knowledge thereof. The bill does not show that the Trust Company had actual knowledge.
It is commonly said that all persons are presumed to know the law, and sometimes the presumption is said to be conclusive.20 Am. Jur. 208. But usually what is really meant is, that the question of knowledge is immaterial. Ignorance of the law is no excuse. A man's acts and omissions have such legal effect as the law prescribes, regardless of his knowledge or ignorance. Muir
v. Newark Savings Institution, 16 N.J. Eq. 537. But occasionally cases arise in which the fact of knowledge, or ignorance of the law is material. For *Page 239 
example: Bills to relieve against mistake of law. Green v.Morris, c., Co., 12 N.J. Eq. 165; 15 N.J. Eq. 469. Restatement,Restitution 179. Cases in which the interpretation of a will or contract turns on the double presumption that the parties knew the law and intended a result permitted by the law. Hewitt v.Green, 77 N.J. Eq. 345, 353; Van Riper v. Hilton, 78 N.J. Eq. 371; Extortion Cases, Cutter ads. State, 36 N.J. Law 125;Vogel v. Brown (Mass.), 87 N.E. Rep. 686. It has been flatly said that no presumption exists that all men know the law.Municipal, c., Manufacturing Co. v. Dobbs (N.Y.),171 N.E. Rep. 75; 68 A.L.R. 1376. But I believe an examination of the cases cited above and others touching the same question, disclose that there is a real presumption of knowledge — that he who claims he was acting under a mistake of law has the burden. The presumption is rebuttable, varies in force with the facts — strong in the case of a lawyer, or with respect to general laws which are matter of common knowledge; weak, almost non-existent, in respect to details or to laws which touch few persons.
When we come to regulations of administrative departments, we find that such regulations have the effect prescribed by law, regardless of the knowledge or ignorance of the person concerned, at least if he is engaged in the regulated business or in a transaction which is the subject of regulation. Thus a war risk insurance policy lapses in accordance with the regulations which control, even though the holder knows nothing of the regulations.Wilbur National Bank v. United States, 294 U.S. 120;55 S.Ct. 362. The lawful rates for rail shipments are determined by applicable tariffs and regulations. Wheelock v. Walsh, c.,Co., 60 Fed. Rep. 2d 415; Hills v. C.N.O.-7 F. RailwayCo. (Ohio), 181 N.E. Rep. 819. Interest charged by a licensed small loan company must be calculated pursuant to regulation. Cotton v. Com. Loan Co. (Ind.),190 N.E. Rep. 853. But my attention has been called to no case where the fact of knowledge of a regulation was material, and the court put the burden of showing ignorance on the person charged. In 31 C.J.S.780 it is stated that the general public are not *Page 240 
presumed to know regulations promulgated by executive officers for carrying a law into effect.
The Alcoholic Beverage Law contains no directions for making the regulations known to the general body of citizens. I suppose that among persons who are not engaged in buying or selling warehouse liquor receipts, not one in a hundred has even heard of the regulation in question. Our Supreme Court has refused to take judicial notice of regulations of the Commissioner of Banking and Insurance, saying, "These are not matters of common knowledge."Apgar v. Weona Building and Loan Association,13 N.J. Mis. R. 121. In my opinion, the defendant Trust Company is not presumed to have known of the regulation on which the first cause of action is based.
I should perhaps end my opinion here, but since there may be an application for leave to amend the bill so as to charge knowledge, I will go further into complainant's case.
One theory on which complainant seeks a recovery is that the pledge of the receipts was contrary to the public policy of the state established by the Commissioner; hence that the pledge was void, the defendant held the receipts as trustee and is answerable for their value.
Before the regulation of January, 1936, was promulgated, the pledge of a warehouse receipt was certainly not contrary to public policy. If, after the regulation was made, such pledge offended the policy, it must be that our policy was changed by the Commissioner.
"Public policy has been defined as that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public, or against the public good." Driver
v. Smith, 89 N.J. Eq. 339; Brooks v. Cooper, 50 N.J. Eq. 761,769. 17 C.J.S. 563, 358. The term admits of no exact definition.Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490; 98 N.J. Eq. 412.
The source of public policy is the statutes enacted by the legislature and in the decisions of the courts; there we find what acts are considered harmful to the public and therefore unlawful. The Commissioner has no authority to change the public policy of the state; his function is limited to giving effect *Page 241 
to the policy declared by the legislature. And not every contract in violation even of a legislative enactment is against public policy and void. Rutkowsky v. Bozza, 77 N.J. Law 724. Public policy is not concerned with minutiae, but with principles. Seldom does a single clause of a statute establish public policy; policy is discovered from study of the whole statute, or even a group of statutes in pari materia. The pledge of the warehouse receipts was not void on the ground of public policy.
Lastly, complainant goes to the rule that a contract, otherwise lawful, is invalidated when one of the parties intends to use the fruits of the contract for an unlawful end, and the other party not only is aware of the intention, but aids in the unlawful acts. 53 A.L.R. 1376; 2 Restatement, Contracts § 602 (2);Williston, Contracts § 1755. The bill of complaint fails to show such participation. It only alleges that defendant "maintained close supervision over its [Southland's] financial affairs. From time to time defendant loaned money to Southland on the security of warehouse receipts, bottled goods and notes receivable without additional collateral." This does not show participation in unlawful acts. True, the concluding paragraph of the bill charges that defendant "not only knew of said unlawful conduct but by its active aid enabled Southland to engage in said conduct." But this statement must be taken to refer merely to the loaning of money.
Participation in the illegal acts is generally found in something outside the principal part of the contract: For instance, where the borrower planned to establish an illicit liquor business and the lender stipulated that a certain brand of liquor should be sold; the stipulation was such a participation in the unlawful business as barred recovery of the loan. JohnsonLand Co. v. Brewing Co. (Minn.), 172 N.W. Rep. 211. And so where the vendor packed goods in a peculiar way in order to facilitate an illegal use by the buyer. Skiff v. Johnson,57 N.H. 475. But the mere lending of money in the ordinary course of business is not a participation in the illegal transactions of the borrower. In the present case, even if defendant had aided the sale of the warehouse receipts *Page 242 
in ignorance of the Commissioner's regulation, it could still have enforced the pledge, for the infringement of this minor regulation does not constitute such illegality as would bring the case within the rule cited by complainant.
Where a contract taken by itself is lawful, the unlawful use of the proceeds by one party will not prevent enforcement by the other, even though the latter knew of the intended purpose, in the absence of serious moral turpitude, or a statute forbidding recovery. Restatement, Contracts § 602 (1); Williston,Contracts § 1754; 17 C.J.S. 680. That principle governs here. The unlawful mode of business of Southland does not infect the transactions, lawful enough themselves, with defendant.
The result is that the first cause of action in the bill will be struck.