199 N.J. Super. 18 (1985)
488 A.2d 229
CORRINE WARTHEN, PLAINTIFF-APPELLANT,
v.
TOMS RIVER COMMUNITY MEMORIAL HOSPITAL, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 8, 1985.
Decided February 14, 1985.
*20 Before Judges MICHELS, PETRELLA and BAIME.
John R. Ford argued the cause for appellant (Auerbach, Rudnick, Waldman, Ford & Addonizio, attorneys; John R. Ford, of counsel and on the letter brief).
Herbert Kruttschnitt III argued the cause for respondent (Novin, Farley, Grossman & York, attorneys; Richard A. Grossman, of counsel and on the brief).
The opinion of the Court was delivered by MICHELS, P.J.A.D.
Plaintiff Corrine Warthen appeals from a summary judgment of the Law Division dismissing her action against defendant Toms River Community Memorial Hospital (Hospital). Plaintiff sought to recover damages for her allegedly wrongful discharge *21 in violation of public policy following her refusal to dialyze a terminally ill double amputee patient because of her "moral, medical and philosophical objections" to performing the procedure.
The facts giving rise to this appeal are not in dispute and may be summarized as follows. The Hospital, where plaintiff had been employed for eleven years as a registered nurse, terminated plaintiff from its employment on August 6, 1982. For the three years just prior to her discharge, plaintiff had worked in the Hospital's kidney dialysis unit. It is undisputed that plaintiff was an at-will employee.
Plaintiff alleges that during the summer of 1982 her supervisor periodically assigned her to dialyze a double amputee patient who suffered from a number of maladies. On two occasions plaintiff claims that she had to cease treatment because the patient suffered cardiac arrest and severe internal hemorrhaging during the dialysis procedure. During the first week of 1982 plaintiff again was scheduled to dialyze this patient. She approached her head nurse and informed her that "she had moral, medical, and philosophical objections" to performing this procedure on the patient because the patient was terminally ill and, she contended, the procedure was causing the patient additional complications. At that time the head nurse granted plaintiff's request for reassignment.
On August 6, 1982, the head nurse again assigned plaintiff to dialyze the same patient. Plaintiff once again objected, apparently stating that she thought she had reached agreement with the head nurse not to be assigned to this particular patient. She also requested the opportunity to meet with the treating physician, Dr. DiBello. Dr. DiBello informed plaintiff that the patient's family wished him kept alive through dialysis and that he would not survive without it. However, plaintiff continued to refuse to dialyze the patient, and the head nurse informed her that if she did not agree to perform the treatment, the *22 Hospital would dismiss her. Plaintiff refused to change her mind, and the Hospital terminated her.
Plaintiff subsequently instituted this action alleging that she was wrongfully discharged by the Hospital without justification and in violation of public policy. The Hospital denied liability to plaintiff and alleged, by way of a separate defense, that plaintiff's termination was appropriate because she had the status of an at-will employee. Following completion of pretrial discovery, the Hospital moved for summary judgment, which the trial court denied because it perceived "that there [was] ... a question of fact as to whether or not there is a public policy as articulated in the nurses' code of ethics that would permit somebody in the nursing profession to refuse to participate in a course of treatment which is against her principles in good faith." However, upon reconsideration, the trial court granted the motion, concluding that "the nurses' code of ethics is a personal moral judgment and permits the nurse to have a personal moral judgment, but it does not rise to a public policy in the face of the general public policies that patients must be cared for in hospitals and patients must be treated basically by doctors and doctors' orders must be carried out." This appeal followed.
Plaintiff contends that the trial court erred in granting summary judgment because her refusal to dialyze the terminally-ill patient was justified as a matter of law by her adherence to the Code for Nurses, a code of ethics promulgated by the American Nurses Association, and that determining whether adherence to the Code "constitutes a public policy question" is a question of fact which should be resolved by a jury, not by the trial court. We disagree.
R. 4:46 permits a party to move for summary judgment at any time. Although summary judgment is a stringent remedy, it should be granted where the pleadings, depositions and answers to interrogatories show that there is no genuine issue as to any material fact challenged and that the moving *23 party is entitled to judgment as a matter of law. See Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 74 (1954); Miller v. U.S. Fidel. & Guar. Co., 127 N.J. Super. 37, 40-41 (App.Div. 1974); Rankin v. Sowinski, 119 N.J. Super. 393, 399-400 (App.Div. 1972); Eisen v. Kostakos, 116 N.J. Super. 358, 370-371 (App.Div. 1971). The purpose of the summary judgment procedure is, with proper adherence to the rules, to avoid trials which would serve no useful purpose and to afford deserving litigants immediate relief. Judson v. Peoples Bank & Trust Co. of Westfield, supra, 17 N.J. at 77. Here, the pleadings, depositions and answers to interrogatories do not raise any genuine issue as to a material fact. Consequently, summary judgment was appropriate for the determination of the legal issues involved.
Plaintiff relies on the "public policy" exception to the "at-will employment" doctrine to justify her claim that defendant wrongfully discharged her. As has often been stated at common law, "in the absence of an employment contract, employers or employees have been free to terminate the employment relationship with or without cause." Pierce v. Ortho Pharmaceutical Corp., 84 N.J. 58, 65-66 (1980). See also English v. College of Medicine and Dentistry of N.J., 73 N.J. 20, 23 (1977); Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 554 (1958); Schlenk v. Lehigh Valley Railroad Co., 1 N.J. 131, 135 (1948). Recently, in Pierce v. Ortho Pharmaceutical Corp., supra, the Supreme Court recognized a developing exception to the traditional "at-will employment" doctrine, holding that "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." Ortho Pharmaceutical supra, 84 N.J. at 72.
As a preliminary matter plaintiff contends that identifying the "clear mandate of public policy" constitutes a genuine issue of material fact for the jury rather than, as occurred in the instant case, a threshold question for the trial judge. To *24 support her contention plaintiff cites Kalman v. Grand Union Co., 183 N.J. Super. 153 (App.Div. 1982), in which we said:
It is the employee's burden to identify "a specific expression" or "a clear mandate" of public policy which might bar his discharge. [Citation omitted]. What constitutes a qualifying mandate is a fact question.... [at 157].
However, quoting the following explanatory language from Ortho Pharmaceutical, we went on to emphasize that "the judiciary must define the cause of action in case-by-case determinations." Id., quoting Ortho Pharmaceutical, supra, 84 N.J. at 72.
In Ortho Pharmaceutical plaintiff, a physician and research scientist, was dismissed because of her opposition to continued laboratory research, development and testing of the drug loperamide, which Ortho intended to market for the treatment of diarrhea. The plaintiff was opposed to the drug because it contained saccharin and because she believed that by continuing work on loperamide she would violate her interpretation of the Hippocratic oath. The Court held, as a matter of law, that where plaintiff merely contended saccharin was controversial, not dangerous, and the FDA had not yet approved human testing of loperamide, the Hippocractic oath did not contain a clear mandate of public policy preventing the physician from continuing research. Then, not finding any issue of material fact, the Supreme Court remanded the case to the trial court for the entry of summary judgment.
Thus, identifying the mandate of public policy is a question of law, analogous to interpreting a statute or defining a duty in a negligence case. See Breslin v. Liberty Mutual Insurance Co., 134 N.J. Super. 357, 365-366 (App.Div. 1975), aff'd, 69 N.J. 435 (1976); McKinley v. Slenderella Systems of Camden, N.J., Inc., 63 N.J. Super. 571, 581 (App.Div. 1960); Schaffer v. Federal Trust Co., 132 N.J. Eq. 235, 240 (Ch. 1942). As the Chancery Court said in Schaffer v. Federal Trust Co., 132 N.J. Eq. 235 (Ch. 1942):
"Public policy has been defined as that principle of law which holds that no person can lawfully do that which has a tendency to be injurious to the public, *25 or against the public good." Driver v. Smith, 89 N.J. Eq. 339; Brooks v. Cooper, 50 N.J. Eq. 761, 769. 17 C.J.S., Contracts, § 211, p. 563, § 30, p. 358. The term admits of no exact definition. Fidelity Union Trust Co. v. Reeves, 96 N.J. Eq. 490; 98 N.J. Eq. 412. The source of public policy is the statutes enacted by the legislature and in the decisions of the courts; there we find what acts are considered harmful to the public and therefore unlawful.
* * * * * * * *
Public policy is not concerned with minutiae, but with principles. Seldom does a single clause of a statute establish public policy; policy is discovered from study of the whole statute, or even a group of statutes in pari materia. [at 240-241].
Based on the foregoing, we hold that where a discharged at-will employee asserts wrongful discharge on public policy grounds, the trial court must, as a matter of law, determine whether public policy justified the alleged conduct. Then, assuming the pleadings raise a genuine issue of material fact, it is for the jury to determine the truth of the employee's allegations. Here, therefore, the issue of whether the Code for Nurses represented a clear expression of public policy did not present a genuine issue of material fact precluding the entry of summary judgment.
Plaintiff next contends that, as a matter of law, the Code for Nurses constitutes an authoritative statement of public policy which justified her conduct and that the trial court therefore improperly granted defendant's motion for summary judgment. In Ortho Pharmaceutical the Supreme Court discussed the role of professional codes of ethics as sources of public policy in "at-will employment" cases:
In certain instances, a professional code of ethics may contain an expression of public policy. However, not all such sources express a clear mandate of public policy. For example, a code of ethics designed to serve only the interests of a profession or an administrative regulation concerned with technical matters probably would not be sufficient. Absent legislation, the judiciary must define the cause of action in case-by-case determinations. An employer's right to discharge an employee at will carries a correlative duty not to discharge an employee who declines to perform an act that would require a violation of a clear mandate of public policy. However, unless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause. [84 N.J. at 72].
*26 The Court carefully warned against confusing reliance on professional ethics with reliance on personal morals:
Employees who are professionals owe a special duty to abide not only by federal and state law, but also by the recognized codes of ethics of their professions. That duty may oblige them to decline to perform acts required by their employers. However, an employee should not have the right to prevent his or her employer from pursuing its business because the employee perceives that a particular business decision violates the employee's personal morals, as distinguished from the recognized code of ethics of the employee's profession. See Comment, 28 Vand.L.Rev. 805, 832 (1975). [84 N.J. at 71-72].
The burden is on the professional to identify "a specific expression" or "a clear mandate" of public policy which might bar his or her dismissal. Id. at 72.
Here, plaintiff cites the Code for Nurses to justify her refusal to dialyze the terminally ill patient. She refers specifically to the following provisions and interpretive statement:
THE NURSE PROVIDES SERVICES WITH RESPECT FOR HUMAN DIGNITY AND THE UNIQUENESS OF THE CLIENT UNRESTRICTED BY CONSIDERATIONS OF SOCIAL OR ECONOMIC STATUS, PERSONAL ATTRIBUTES, OR THE NATURE OF HEALTH PROBLEMS.
* * * * * * * *
1. 4 THE NATURE OF HEALTH PROBLEMS
* * * * * * * *
The nurse's concern for human dignity and the provision of quality nursing care is not limited by personal attitudes or beliefs. If personally opposed to the delivery of care in a particular case because of the nature of the health problem or the procedures to be used, the nurse is justified in refusing to participate. Such refusal should be made known in advance and in time for other appropriate arrangements to be made for the client's nursing care. If the nurse must knowingly enter such a case under emergency circumstances or enters unknowingly, the obligation to provide the best possible care is observed. The nurse withdraws from this type of situation only when assured that alternative sources of nursing care are available to the client. If a client requests information or counsel in an area that is legally sanctioned but contrary to the nurse's personal beliefs, the nurse may refuse to provide these services but must advise the client of sources where such service is available. [American Nurses Association, Code for Nurses with Interpretive Statements ¶ 1.4 at 5 (1981)].
Plaintiff contends that these provisions constitute a clear mandate of public policy justifying her conduct. Cf. Ortho Pharmaceutical, supra, 84 N.J. at 71-72.
*27 It is our view that as applied to the circumstances of this case the passage cited by plaintiff defines a standard of conduct beneficial only to the individual nurse and not to the public at large. The overall purpose of the language cited by plaintiff is to preserve human dignity; however, it should not be at the expense of the patient's life or contrary to the family's wishes. The record before us shows that the family had requested that dialysis be continued on the patient, and there is nothing to suggest that the patient had, or would have, indicated otherwise. See In re Conroy, 98 N.J. 321, 361 (1985).
Recently, in In re Conroy, supra, our Supreme Court confirmed this State's basic interest in the preservation of life, id. at 351, and our recognition, embraced in the right to self-determination, that all patients have a fundamental right to expect that medical treatment will not be terminated against their will. Id. at 343. This basic policy mandate clearly outweighs any policy favoring the right of a nurse to refuse to participate in treatments which he or she personally believes threatens human dignity. Indeed, the following passage from the Code for Nurses echoes the policy cited by Conroy and severely constrains the ethical right of nurses to refuse participation in medical procedures:
1.4 THE NATURE OF HEALTH PROBLEMS
The nurse's respect for the worth and dignity of the individual human being applies irrespective of the nature of the health problem. It is reflected in the care given the person who is disabled as well as the normal; the patient with the long-term illness as well as the one with the acute illness, or the recovering patient as well as the one who is terminally ill or dying. It extends to all who require the services of the nurse for the promotion of health, the prevention of illness, the restoration of health, and the alleviation of suffering. [American Nurses Association, Code for Nurses with Interpretive Statements, supra, ¶ 1.4 at 5].
The position asserted by plaintiff serves only the individual and the nurses' profession while leaving the public to wonder when and whether they will receive nursing care. See Ortho Pharmaceutical, supra, 84 N.J. at 71-72. Moreover, as the Hospital argues, "[i]t would be a virtual impossibility to administer a hospital if each nurse or member of the administration *28 staff refused to carry out his or her duties based upon a personal private belief concerning the right to live...."
Concededly, plaintiff had to make a difficult decision. Viewing the facts in a light most beneficial to plaintiff, she had dialyzed the particular patient on several occasions in the past, and on two of those occasions plaintiff says the patient had suffered cardiac arrest and severe internal hemorrhaging during the dialysis procedure. The first time plaintiff objected to performing the procedure her head nurse agreed to reassign her, and at that time plaintiff apparently believed she had an agreement with the head nurse not to be assigned to this particular patient. She also believed she had fulfilled her ethical obligation by making her refusal to participate in the procedure "known in advance and in time for other appropriate arrangements to be made for the client's nursing care."
Nonetheless, we conclude as a matter of law that even under the circumstances of this case the ethical considerations cited by plaintiff do not rise to the level of a public policy mandate permitting a registered nursing professional to refuse to provide medical treatment to a terminally ill patient, even where that nursing professional gives his or her superiors advance warning. Beyond this, even if we were to make the dubious assumption that the Code for Nurses represents a clear expression of public policy, we have no hesitancy in concluding on this record that plaintiff was motivated by her own personal morals, precluding application of the "public policy" exception to the "at-will employment" doctrine. Plaintiff alleged that each time she refused to dialyze the patient she told the head nurse that she had "moral, medical and philosophical objections" to performing the procedure. She makes no assertion that she ever referred to her obligations and entitlements pursuant to her code of ethics. In addition, the very basis for plaintiff's reliance on the Code for Nurses is that she was personally opposed to the dialysis procedure. By refusing to perform the procedure she may have eased her own conscience, but she *29 neither benefited the society-at-large, the patient, nor the patient's family.
Accordingly, the judgment under review is affirmed.